## In re Anonymous No. 47 D.B. 82

Disciplinary Board Docket no. 47 D.B. 82.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

RAVEN RUDNITSKY, *Member,* February 13, 1995—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with

respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On August 16, 1982, petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania.

Petitioner filed his petition for reinstatement and the reinstatement questionnaire on August 2, 1993.

The matter was referred to Hearing Committee [    ] on August 11, 1993. The committee consisted of [    ], Esquire, Chairperson, [    ], Esquire, member, and [    ], Esquire, member.

A hearing on this matter was held February 15, 1994.

On April 7, 1994, petitioner submitted proposed findings of fact and conclusions of law. Office of Disciplinary Counsel submitted a letter-response to petitioner's proposed findings of fact on April 13, 1994.

On September 26, 1994, the Hearing Committee filed its report recommending that reinstatement be granted. Petitioner filed a letter on September 29, 1994, submitting corrections to the report of the Hearing Committee. Neither party filed a brief on exceptions to the Hearing Committee report.

The matter was referred to the Disciplinary Board and adjudicated on December 16, 1994.

## II. FINDINGS OF FACT

(1) Petitioner was born in 1950, and he was admitted to the bar of the Commonwealth of Pennsylvania in 1981.

(2) Petitioner was disbarred on consent by order of the Supreme Court dated August 16, 1982.

(3) Petitioner was convicted of conspiracy to distribute LSD, in violation of 21 U.S.C. §846; distribution of LSD, in violation of 21 U.S.C. §841(a)(1), and 18 U.S.C. §2; and aiding and abetting the interstate travel to permit an unlawful activity, in violation of 18 U.S.C. §§1952, and 2. U.S. District Judge [A] sentenced petitioner to a term of four years of imprisonment to be followed by a three year term of special parole for the second count in addition to the imprisonment.

(4) Petitioner was under supervision of federal authorities during the following period of over 10 years:

"(A) From 1982 to March 1986, supervision by United States Pre-Trial Services Office for the [     ] District of Pennsylvania and the District of [     ];

"(B) From March 1986 through November 1987, petitioner incarcerated at Federal Prison Camp at [     ];

"(C) November 1987 to April 1988, [     ] Federal Bureau of Prisons Halfway House, and house arrest from April 1988 to May 1988;

"(D) Parole until June 1992, when the parole was terminated early by the federal parole office."

(5) During the entire period of his supervision, no drug use was found despite random unannounced urinalysis.

(6) Petitioner demonstrated community involvement by volunteering for over 1500 hours with the [     ] Society both before and after imprisonment. Petitioner served as convenor (local chairman) of the [     ] branch from spring 1982 to March 1986. Petitioner has continued his affiliation to the present.

(7) Petitioner continues to participate in Alcoholics Anonymous.

(8) Petitioner undertook an intensive weekly program of counselling with [B] Ed.D., for approximately two and one-half years from April 1982 to July 1984.

(9) Dr. [B] testified that petitioner was very sincere and committed to treatment, and that petitioner showed his commitment throughout the course of treatment by being regular with appointments and forthcoming in discussion. As a result, petitioner made "considerable progress" in treatment.

(10) Dr. [B] testified to petitioner's remorse over the events leading to his resignation. This testimony was supported by the testimony of several attorneys familiar with the petitioner, (testimony of [C], testimony of [D], and by letters submitted by attorneys, *e.g.,* letter of [E], dated February 10, 1994, fourth page; letter of [F], dated January 25, 1993, second page; letter of [G], dated January 21, 1994).

(11) Dr. [B] also testified that petitioner had no bitterness about the experience and held himself responsible for his actions. This testimony is also supported by letters from attorneys. (Exh. P-7 letter of [H], dated February 11, 1994; letter of [I], dated January 25, 1994; letter of [J], dated February 14, 1994.) Further support is found in petitioner's own testimony about the reasons for his hesitance in reapplying until this time.

(12) Several attorneys testified that petitioner has the ability to handle the stress of practice, testimony of [C]; testimony of [K]; testimony of [E].

(13) Petitioner's witnesses also spoke of his reputation for integrity and truthfulness. See *e.g.,* testimony of [C]; testimony of [K]. This testimony was buttressed by the many letters in support of petitioner's petition.

(14) Petitioner has counselled persons who are about to serve prison terms about the consequences of drug use and about the general nature of prison life.

(15) Petitioner established his learning in the law by:

"(A) Taking the Pennsylvania Practice Course at [    ] University (N.T. 116, exh. P-2);

"(B) Regularly studying many legal periodicals including the *Pennsylvania Reporter,* the *Federal Supplement and Federal Reporter,* the Supreme Court Reports and the *Criminal Law Reporter,* among others (N.T. 116);

"(C) Testimony concerning his work and the authorship of several articles under the supervision of other attorneys." (N.T. 110-11.)

(16) Overwhelmingly positive testimony of all petitioner's witnesses and letters supported the petition, see *e.g.,* testimony of [L]; testimony of [M].

## III. CONCLUSIONS OF LAW

The misconduct underlying petitioner's resignation and disbarment by consent is not so egregious as to preclude consideration of his petition for reinstatement.

Petitioner has engaged in a qualitative rehabilitation during his disbarment.

Petitioner has demonstrated with clear and convincing evidence that he possesses the moral qualifications, competency, and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor subversive of the interest of the public.

## IV. DISCUSSION

The only issue before the board in this case is petitioner's reinstatement petition. Because this is a reinstatement from a disbarment, the task is two-fold. The first part of the analysis is the inquiry called for in *Office of Disciplinary Counsel v. Keller,* 509 Pa.

573, 506 A.2d 872 (1986). The second part of the analysis is a determination of whether petitioner has met the burden imposed by Pa.R.D.E. 218(c)(3)(i).

The Supreme Court stated in the *Keller* decision that:

"When reinstatement is sought by the disbarred attorney, the threshold question must be whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon 'the integrity and standing of the bar or the administration of justice nor subversive of the public interest.' " *Id.* at 579, 506 A.2d at 875.

This inquiry consists of two parts; first, an examination of the underlying misconduct which led to the sanction; and second, an inquiry into the petitioner's behavior during the period of disbarment.

The initial inquiry into the misconduct is necessary because certain misconduct is so egregious as to ever preclude the readmission of the disbarred attorney to the practice of law. See *In re Anonymous No. 62 D.B. 75,* 39 D.&C.3d 124, 131 (1986). (Attorney convicted of assault for attack on estranged spouse and companion denied reinstatement.) In the case presently before the board, petitioner voluntarily resigned and was disbarred on consent because of his conviction in Federal District Court of the distribution and conspiracy to distribute the non-narcotic controlled drug, LSD. Ultimately, petitioner was sentenced to a prison term of four years and a three year term following imprisonment of special parole.

Petitioner's behavior is similar to that of other attorneys seeking readmission to the bar, and these cases provide guidance for the present petition. A disbarred attorney sought reinstatement in *In re Anonymous No. 30 D.B. 79,* 1 D.&C.4th 14 (1987). He had been convicted of possession and delivery of a controlled sub-

stance. In addition, the Hearing Committee found that he had commingled client funds. The attorney was granted reinstatement despite these offenses. Similarly, *In re Anonymous No. 45 D.B. 84,* 15 D.&C.4th 321 (1992), involved an attorney convicted of possession of cocaine with intent to distribute who was disbarred on the basis of this conviction. He, too, was reinstated. Because petitioner's behavior is comparable to the above cases wherein reinstatement was granted, his offense should not bar his petition if he otherwise meets the qualifications for reinstatement.

Finding, therefore, that the misconduct in this case was not so great as to immediately bar consideration of the petition, the next question is whether petitioner's actions during his period of disbarment evidence rehabilitation.

The evidence before the board very clearly shows that he did. First, we note that petitioner's period of disbarment has lasted for 12 years as of this date. We also note that petitioner has completed all of his prison term and his parole term and received early termination of his parole from the parole office.

Petitioner has taken several steps during this period which evidence his recognition of responsibility for his actions at the time of the misconduct. We note that petitioner took the initiative to resign rather than await disciplinary action resulting in sanction. Second, we note that immediately after his arrest, petitioner began counselling with Dr. [B], Ed.D. This was an intensive program of counselling in which petitioner met with Dr. [B] weekly over an approximately two and one-half year period from April 1982 to July 1984. Dr. [B] testified that petitioner was very sincere and committed to the treatment process, and that petitioner remained committed throughout the course of treatment.

Dr. [B] testified that, for example, petitioner was very regular in meeting the appointments and very forthcoming about his problems. Dr. [B] concluded that as a result of this commitment by petitioner that petitioner made "considerable progress" in treatment. Dr. [B] discharged petitioner from the weekly treatment program in July 1984. Dr. [B] testified that petitioner's remorse was very evident concerning the events leading to his resignation. Dr. [B's] observations were supported by the testimony of several attorneys familiar with petitioner. [C], Esquire and [D], Esquire both testified to petitioner's remorse. This was further supported by letters submitted by attorneys to the Hearing Committee. (Exh. P-7, letter of [E], dated February 10, 1994; letter of [F], dated January 25, 1993; and letter of [G], dated January 21, 1994.)

Petitioner showed more than simple remorse over the events, however. Dr. [B] and several of the letters submitted also show that petitioner had no bitterness over the process and held himself fully responsible for his actions. (N.T. 23, 24, exh. P-7, letter of [H], dated February 11, 1994; letter of [I], dated January 25, 1994; letter of [J], dated February 14, 1994.) Petitioner also supports this finding of responsibility through his own testimony about the timing of his reapplication and petition for reinstatement.

Evidence of rehabilitation is also shown through petitioner's involvement with the [    ] Society. Petitioner became involved in the society before his imprisonment.

Petitioner served as convenor (local chairman) of the [    ] branch from spring 1982 to March 1986, just prior to his commitment. His involvement was extensive and appreciated. Petitioner has continued his affiliation with the organization to the present. Furthermore, petitioner has also shown his rehabilitation

through continuing participation in Alcoholics Anonymous. Therefore, the board concludes that petitioner has met the burden of the *Keller* threshold.

The next inquiry in a reinstatement from disbarment case is a consideration of the burden set by Pa.R.D.E. 218(c)(3)(i), which reads as follows:

"A disbarred or suspended attorney shall have the burden of demonstrating the clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest."

There are three separate inquiries under this rule, petitioner's moral qualifications, his legal competency, and the impact of petitioner's reinstatement upon the bar, the administration of justice and the public.

A consideration of the petitioner's moral qualifications must, in this case, include all which has already been detailed under the petitioner's extensive efforts at rehabilitation. These include his recognition of responsibility, his thorough treatment with a psychological counselor, his remorse and his community activities. All of the witnesses which petitioner presented and all of the letters which petitioner submitted support a finding of moral qualification. Much of the testimony goes explicitly to this question, including a reputation for integrity and truthfulness. See *e.g.,* testimony of [K], Esquire (N.T. 56-57) and testimony of [D], Esquire.

Another consideration which was clearly presented by petitioner's witnesses and evidence was petitioner's demonstrated ability to handle stress. This is significant given his prior use of controlled substances and concern

over the use of alcohol. Petitioner's witnesses testified that he works under pressure well, (N.T. 61), that he has good work habits, and he is able to manage deadline conflicts by telling whoever is involved that he cannot perform the work. (N.T. 93.)

Both [E], Esquire and Dr. [B] testified that they did not detect any continuing use of any controlled substances by petitioner. Dr. [B] testified that he saw no signs of continuing drug use after formal treatment ended. [E] testified that he has extensive experience, both legal and nonlegal, in dealing with drug abuse and drug users. He further testified that he met with the petitioner almost daily, and closely observed him for use of controlled substances. He has seen no signs of drug abuse in the petitioner. Attorney [E] is certain that petitioner would be unable to keep up with his workload if he abused drugs. (N.T. 91-92.)

The Hearing Committee also explored one other area bearing on petitioner's moral qualifications. Petitioner reported on his reinstatement questionnaire that he had been arrested for driving under the influence in [   ] County, [   ] in 1990. Petitioner provided a reasonable explanation for the incident, which resulted in petitioner being found not guilty of the offense. The evidence clearly suggests that this was an aberration, and that petitioner's involvement in Alcoholics Anonymous will make a recurrence of any similar event unlikely.

Taking into account all the foregoing, the board concludes that petitioner has clearly met his burden of showing moral qualification.

The second part of this inquiry concerns petitioner's learning in the law. His extensive work for attorneys of thousands of cases have given him a depth of knowledge to which all witnesses and all letters submitted testify. On a basic level, petitioner has completed the

Pennsylvania Basic Practice Course held at [ ] University and submitted documentation thereof. In addition, petitioner testified to his review of the advance sheets of a number of relevant reporters including *Pennsylvania Reporter,* the *Federal Criminal Law Reporter,* the *Federal Supplement,* the *Federal Reporter* and the *Supreme Court Reports.* Petitioner also testified to reading a number of other treatises and works and to the completion of several articles on various areas of the law under the supervision of an attorney. These articles were published. The most impressive part of this petition was the clearly high regard in which all attorneys held the petitioner's knowledge of the law, particularly in criminal law and criminal sentencing matters. This is also the major thrust of all the letters submitted by attorneys to the Hearing Committee. The board concludes that petitioner has clearly met the burden of proving his learning in law.

The third part of this inquiry concerns the impact upon the public and the court system by the readmission of petitioner. At the outset, we note that the Office of Disciplinary Counsel does not oppose petitioner's reinstatement. In addition, we note Dr. [B's] observations of petitioner's personality growth and that petitioner has developed resources for helping himself through counseling such as that provided by Dr. [B] and through the Alcoholics Anonymous network. Finally, as previously noted, a large number of witnesses and letters submitted to the Hearing Committee all supported petitioner's reinstatement and a number stated that the bar would, thereby, be helped. Having concluded that petitioner has met his burden by clear and convincing evidence both under the initial *Keller* threshold inquiry and the Rule 218 inquiry, the board, therefore, recommends that petitioner be reinstated to the practice of law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [    ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Kerns did not participate in the adjudication.

## ORDER

And now, March 10, 1995, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated February 13, 1995, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Montemuro is sitting by designation.